## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDELL SWINSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, et al. | : | NO.  07-3934 |

## REPORT AND RECOMMENDATION

L. Felipe Restrepo                                      September 29, 2008
United States Magistrate Judge

Presently before the Court is a Petition for Writ of Habeas Corpus filed by Lindell

Swinson pursuant to 28 U.S.C. § 2254.[1]  Petitioner is currently incarcerated at the State

Correctional Institution in Albion, Pennsylvania.  For the reasons which follow, the habeas

petition should be denied and dismissed.

1.   Procedural History

On February 27, 2006, following a jury trial in the Court of Common Pleas of

Philadelphia, Swinson was found guilty of First Degree Murder and other related offenses[2]

---

1.  Although some of the documents in the state court record identify petitioner as "Lydell
Swinson," and Swinson has signed some of the documents apparently identifying himself as
such, since Swinson identifies himself as "Lindell Swinson" in his § 2254 petition, that is how he
is referred to herein.

2.  Swinson was also found guilty of robbery, possession of an instrument of crime, and criminal
conspiracy.  See N.T. Trial 2/27/06, at 23-24.

(herein referred to as Swinson's "first case").[3]  See Common Pleas Ct. Op. dated 6/19/07, at 2;

N.T. Trial 2/27/06, at 23-24.  Prior to the penalty phase of the proceedings during which a jury

was to have determined whether Swinson was to receive the death penalty or a sentence of life in

prison, after discussion with his attorneys, Swinson decided to enter into a negotiated guilty plea

on a related death penalty case (herein referred to as Swinson's "second case")[4] and waive all of

his appellate and collateral review rights in the first and second cases.  Id.  As the trial court

explained:

> Pursuant to the plea on his second case and in exchange for that
> guilty plea, a waiver of all appellate rights, and a **waiver of all
> rights to seek collateral review of the conviction, sentence, and
> plea agreement**, the Commonwealth agreed to withdraw the death
> penalty as a possible sentence in both of his cases.  Notably
> petitioner's initial first degree murder conviction could have served
> as an aggravating factor for penalty phase purposes in his second
> case.
>      Accordingly, on [his first case], the Court imposed a
> sentence of life in prison.  On March 1, 2006, the Court imposed a
> consecutive life sentence for the [second case], listed at CP-CR-
> 502901-2005.  Afterwards, petitioner filed neither a motion to
> withdraw his plea nor a direct appeal.

Id. at 2-3 (emphasis added).[5]

---

3.  Swinson's first case is identified in the Pennsylvania courts as Criminal No. CP-51-CR-
502871-2005.  See Commonwealth v. Swinson, No. CP-51-CR-502901-2005, Notice Pursuant to
Pa. Rule of Crim. P. 907, at 2 (C.P. Phila. June 19, 2007) (herein cited as "Common Pleas Ct.
Op. dated 6/19/07").

4.  Swinson's second case is identified in the Pennsylvania courts as Crim. No. CP-51-CR-
502901-2005.  See Common Pleas Ct. Op. dated 6/19/07, at 2.

5.  Thus, the Commonwealth offered to forgo its right to seek the death penalty as to each of the
murder convictions, and Swinson agreed to plead guilty in the second case and give up his rights
to appellate and collateral review of his convictions and sentences in both cases.  Petitioner opted
to accept the life sentences instead of possibly receiving one or even two death sentences, and he
signed a Written Agreement Colloquy and a Written Guilty Plea Colloquy.  See Written
Agreement Colloquy dated 2/27/06, ¶ 11; Written Guilty Plea Colloquy dated 2/27/06, at 1-4.

On June 26, 2006, Swinson filed a petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-46.  See PCRA Pet. filed 6/26/06, at 1; Common Pleas Ct. Crim. Dckt. No. CP-51-CR-502871-2005, at 22; see also Letter from Petr.'s PCRA Counsel to Common Pleas Ct. dated 2/20/07, at 1.  Upon review of the record and pursuant to Commonwealth v. Finley, 550 A.2d 213, 214 (Pa. Super. 1988), petitioner's appointed counsel sent a "no merit" letter to the PCRA Court indicating that the PCRA petition should be dismissed, and counsel requested that he be permitted to withdraw his representation of petitioner.  See Letter from Petr.'s PCRA Counsel to Common Pleas Ct. dated 2/20/07, at 1.   On April 27, 2007, the PCRA Court dismissed the petition as having no arguable merit.  See Common Pleas Ct. Crim. Dckt. No. CP-51-CR-502871-2005, at 23; see also Common Pleas Ct. Op. dated 6/19/07, at 2 n.3.

On August 16, 2006, while his first PCRA petition was pending, Swinson filed a second PCRA petition.  See PCRA Pet. filed 8/16/06, at 1; Common Pleas Ct. Crim. Dckt. No. CP-51-CR-502871-2005, at 22; see also Common Pleas Ct. Op. dated 6/19/07, at 3; Letter from Petr.'s PCRA counsel to Common Pleas Ct. dated 6/15/07, at 1.  Following the appointment of new counsel, counsel filed "no merit" Finley letters dated June 16, 2007 and July 26, 2007, respectively, indicating that petitioner's claims were without merit.  On July 27, 2007, the PCRA Court denied the petition as frivolous.[6]  See Common Pleas Ct. Crim. Dckt. No. CP-51-CR-

---

6.  While his PCRA petitions were pending in the Court of Common Pleas, Swinson also filed a Petition for Writ of Habeas Corpus in the Superior Court of Pennsylvania on Dec. 27, 2006.  On Jan. 23, 2007, the Superior Court dismissed the habeas petition for lack of jurisdiction.  See Pa. Super. Ct. Dckt. No. 155 EDM 2006, at 2.  In addition, also while his second PCRA petition was pending in the Common Pleas Court, Swinson filed on March 16, 2007, a habeas petition in the Supreme Court of Pennsylvania, and that petition was denied on June 7, 2007.  See Pa. Supreme Ct. Dckt. No. 59 EM 2007, at 3.

502871-2005, at 24.

On August 27, 2007, Swinson filed a notice of appeal in the Superior Court of Pennsylvania.  See Pa. Super. Ct. Dckt. No. 2227 EDA 2007, at 2.  On September 13, 2007, the PCRA Court ordered Swinson to file of record and serve on the trial judge a "Statement of Matters Complained of on Appeal," pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure.  See Common Pleas Ct. Order dated 9/13/07.  By Opinion dated October 11, 2007, finding that Swinson had failed to comply with the Court's September 13th Order and Rule 1925(b), the PCRA Court stated that it "will not address any issues" raised on appeal.  See Common Pleas Ct. Op. dated 10/11/07, at 1 (citing Commonwealth v. Lord, 719 A.2d 306, 308 (Pa. 1998)); see also Lord, 719 A.2d at 420 ("Any issues not raised in a 1925(b) statement will be deemed waived").  On October 30, 2007, finding that Swinson also failed to comply with Rule 3517 of the Pennsylvania Rules of Appellate Procedure by failing to file a docketing statement after being ordered to do so, the Superior Court dismissed Swinson's appeal.  See Pa. Super. Ct. Dckt. No. 2227 EDA 2007, at 3; see also Pa. R. App. P. 3517 (providing for "dismissal of the appeal" for "[f]ailure to file a docketing statement").

In his § 2254 petition, Swinson challenges the voluntariness of his guilty plea and his competence to enter his plea.  See Hab. Pet. (Doc. No. 3) ¶ 12(A)-(D).  In her Response to the habeas petition, the District Attorney of Philadelphia argues that Swinson expressly and validly waived his appellate and collateral review rights, and in any event, his claims are procedurally defaulted and entirely without merit.  See Resp. to Hab. Pet. at 4-17.  Therefore, respondent denies that Swinson is entitled to federal habeas review or relief.  Id. at 4.

4

2.   DISCUSSION

(A)   Waiver of Appellate and Collateral Review

Noting the benefits to the defendant, government and court system, the Third Circuit has "refused to find waivers of appeal rights violative of public policy."  United States v. Mabry, 536 F.3d 231, 236 n.3 (3d Cir. 2008) (citing United States v. Khattak, 273 F.3d 557, 562 (3d Cir. 2001)).  Furthermore, "[a]llowing defendants to retract waivers would prolong litigation, affording defendants the benefits of their agreements while shielding them from their self-imposed burdens."  Khattak, 273 F.3d at 561.  Thus, the Third Circuit has stated:

> We are in full agreement with the Commonwealth that if a defendant who has participated in a waiver proceeding is then allowed, without exception, to change his mind whenever he chooses, the doctrine of waiver will be rendered purposeless.  Moreover, such an indulgence would be bad judicial policy resulting in frequent hearings and the expenditure of untold judicial resources.

Fahy v. Horn, 516 F.3d 169, 187 (3d Cir. 2008).

Waivers of rights to appeal and collateral review are valid if entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice.[7]  Khattak, 273 F.3d at 558; see Mabry, 536 F.3d at 236 n.3; United States v. Shedrick, 493 F.3d 292, 297 (3d Cir. 2007); see also Fahy, 516 F.3d at 187 (citing Shedrick); United States v. Perry, 142 Fed. Appx. 610, 612 (3d Cir. 2005) (affirming the denial of collateral review where the petitioner validly and "expressly waived the right to file a collateral attack upon his conviction and sentence"); United States v. Morrison, 2008 WL 2265283, at *1 (3d Cir. June 3, 2008).  The language of the waiver is to be "strictly construe[d]," and if the waiver applies by its terms, "it is the [petitioner's]

---

7.  The inquiry as to the validity of an appellate waiver and a waiver in a collateral challenge "is the same."  See Mabry, 536 F.3d at n.6.

burden to show the waiver should not be enforced." Morrison, 2008 WL 2265283, at *1 (citing

Khattak, 273 F.3d at 562-63). "A waiver of the right to appeal includes a waiver of the right to

appeal difficult or debatable legal issues - indeed, it includes a waiver of the right to appeal

blatant error." Khattak, 273 F.3d at 561; see Morrison, 2008 WL 2265283, at *1; see also United

States v. Wenger, 58 F.3d 280, 282 (7th Cir. 1995) ("To say that a waiver of appeal is effective if

and only if the defendant lacks grounds for appeal is to say that waivers will not be honored."),

cert. denied, 516 U.S. 936 (1995).

In Khattak, the Court noted that there was not a material distinction between the well-

recognized ability of criminal defendants to knowingly and voluntarily waive fundamental

Constitutional rights, and their ability to knowingly and voluntarily waive appellate rights.[8] See

Khattak, 273 F.3d at 561; see also United States v. Chica, 151 Fed. Appx. 209, 211 (3d Cir.

2005) (citing Khattak). In analyzing a defendant's waiver of constitutional rights, the United

States Supreme Court has said that the purpose of the "'knowing and voluntary' inquiry . . . is to

determine whether the defendant actually does understand the significance and consequences of a

particular decision and whether the decision is uncoerced." Godinez v. Moran, 509 U.S. 389,

401 n.12 (1993) (emphasis omitted); Fahy, 516 F.3d at 185 (quoting Godinez); see also Khattak,

273 F.3d at 561; Ardrey v. Bravo, 43 Fed. Appx. 176, 178 (10th Cir. 2002) (citing Boykin v.

Alabama, 395 U.S. 238, 242-44 (1969)) (state court guilty plea is constitutional if circumstances

demonstrate that the defendant understood the nature and consequences and that the defendant

voluntarily chose to plead guilty.). As is the case where a defendant challenges the validity of a

---

8. "The United States Constitution does not guarantee a right to appeal." Mabry, 536 F.3d at
236 n.3 (citing Jones v. Barnes, 463 U.S. 745, 751 (1983)). Rather, "[t]he right to appeal a
criminal conviction is created by statute." Mabry, 536 F.3d at 236 n.3 (citing 18 U.S.C. § 3742).

guilty plea, the representations of the defendant, his lawyer, and the prosecutor at a waiver

hearing, as well as any findings made by the judge accepting the waiver, "constitute a formidable

barrier in any subsequent collateral proceedings.  Solemn declarations made in open court carry a

strong presumption of verity."  See Zilich v. Reid, 36 F.3d 317, 320 (3d Cir. 1994) (quoting

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)) (discussing the validity of a guilty plea); see

also Zilich, 36 F.3d at 320 ("A habeas petitioner challenging the voluntary nature of his or her

guilty plea faces a heavy burden.").

        In this case, in denying Swinson's first PCRA petition, the PCRA Court made the

following findings:

> [T]his Court has conducted an independent review of the
> record and has found that . . . [Swinson] entered his guilty plea before
> this Court knowingly, intelligently and voluntarily.
> . . . .
> . . . Before accepting petitioner's guilty plea, this Court conducted
> detailed and thorough oral and written guilty plea colloquies with
> Petitioner.  In the written colloquy, signed by the petitioner moments
> before he entered his guilty plea before the Court, **Petitioner
> affirmed that he was "not under the influence of any drugs,
> alcohol, or medication."** . . . Moreover, in an oral colloquy with the
> Court prior to entering his guilty plea, Petitioner declared the
> following:

> THE COURT:        **WHY DO YOU WANT TO
>                   PLEAD?**
> THE DEFENDANT:  **BECAUSE I DID IT.**
> . . . .
>
> THE COURT:        **DID ANYBODY PRESSURE YOU
>                   OR THREATEN YOU IN ANY
>                   WAY TO GET YOU TO PLEAD
>                   GUILTY TO THIS ADDITIONAL
>                   MURDER CHARGE?**
> THE DEFENDANT:  **NO MA'AM**
> THE COURT:        **ARE YOU PLEADING GUILTY
>                   OF YOUR OWN FREE WILL?**

> THE DEFENDANT: **YES MA'AM**
> THE COURT: **AND WHOSE DECISION IS IT TO PLEAD GUILTY IN THIS CASE?**
> THE DEFENDANT: **MINE.**

See Commonwealth v. Swinson, No. CP-51-CR-502871-2005, Notice Pursuant to Pa. R. Crim. P. 907, at 2-3 (C.P. Phila. March 12, 2007) (herein cited as "Common Pleas Ct. Op. dated 3/12/07") (quoting N.T. 2/26/06, at 48) (emphasis added). The Court further found that "under the circumstances, Petitioner's entry of his guilty plea was knowing, intelligent, and voluntary." See Common Pleas Ct. Op. dated 3/12/07, at 3. In denying Swinson's second PCRA petition, the PCRA Court also found: "Because the petitioner knowingly, intelligently, and voluntarily waived his appellate rights pursuant to a negotiated guilty plea, his claim that trial counsel was ineffective for failing to file a direct appeal has no merit." See Common Pleas Ct. Op. dated 6/19/07, at 1.

The colloquy at the waiver hearing included the following:

> THE COURT: All right. Did you have the opportunity, sir, to review the four page Written Guilty Plea Colloquy form that you signed on the bottom of page three? Did you review that?
> THE DEFENDANT: Yes.
> THE COURT: Did you understand your rights as they are described on this form?
> THE DEFENDANT: Yes.
> THE COURT: Do you have any questions about anything you saw on the form or anything you have heard me say?
> THE DEFENDANT: No.
> THE COURT: And did you review the Written Agreement Colloquy that was just printed out by the District Attorney's Office and brought over here which indicates that you are agreeing that this sentence that you get in this additional case is going to be consecutive to the other one?
> THE DEFENDANT: Yes.
> THE COURT: Of course, I don't know how we are going to impose it consecutive if we are deferring on this one. But be that as

it may, so you understand that you have two consecutive life sentences that you are going to be receiving for your two cases and you understand you will not be able to file an appeal to the case that you were just found guilty by the District Attorney's Office – by the jury?  I am sorry.  Strike that.

You are not going to be able to appeal the decision that this jury just rendered.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And you are giving up your right to do that.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And you are also not going to be able in either case to file what's called collateral proceedings.  In other words, you may have heard in the prison, sometimes it's referred to as a PCRA or ineffective assistance of counsel claims, any of that.

Do you understand that?

DEFENDANT WATTS:  Yes.

THE COURT:  and so you reviewed this written agreement colloquy which is three pages, four pages long and you signed at the top – well, it's more than four pages long.  It's four pages of substance and then at the top of the fifth page you signed  and then at the end there is a certification by your attorneys and then there is a district attorney certification and then there is some place where I am going to sign.

So you reviewed all of that?

THE DEFENDANT:  Yes.

THE COURT:  You understand by pleading guilty you give up your rights to a trial and you are giving in fact up your rights also to appeal?

THE DEFENDANT: Yes, Ma'am.

THE COURT:  Have any promises or representations been made to you to get you to plead guilty other than the fact that the Commonwealth is removing the death penalty from both of these cases?

THE DEFENDANT:  No.

THE COURT:  Excuse me?

THE DEFENDANT:  No.

THE COURT:  Did anybody pressure you or threaten you in any way to get you to plead guilty to this additional murder charge?

THE DEFENDANT:  No, Ma'am.

THE COURT:  Are you pleading guilty of your own free will?

THE DEFENDANT:  Yes, Ma'am.

THE COURT:  And whose decision is it to plead guilty in

9

this case?
                    THE DEFENDANT:   Mine.

See N.T. 2/27/06, at 45-48 (caps omitted).  A summary of the facts of the crimes with which

Swinson was being charged in the second case were then read to him, and he confirmed that they

were the facts to which he was pleading guilty to First Degree Murder.  After Swinson's guilty

plea, the following additional colloquy occurred:

> THE COURT:   The Court finds that the entry of your plea
> has been made knowingly, intelligently, and voluntarily and,
> therefore, I will accept it.
>                    And, Mr. Swinson, you do understand everything
> that is being said and done here today?
>                    THE DEFENDANT:  Yes, Ma'am.
>                    THE COURT:   And are you entering that, did you enter the
> agreement that you signed here, the Written Agreement Colloquy
> form, of your own free will?
>                    THE DEFENDANT:  Yes, Ma'am.
>                    THE COURT:   All right.

Id. at 51-52 (caps omitted).

        Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), P.L. 104-132 (Apr. 26, 1996), heightened the level of deference

accorded to state court factual and legal determinations with respect to any § 2254 "**claim** that

was adjudicated on the merits in State court proceedings."  See § 2254(d) (emphasis added);

Lambert v. Blackwell, 387 F.3d 210, 238 (3d Cir. 2004) (observing that under § 2254(d)

deference is accorded to state court "legal and factual determinations"), cert. denied, 544 U.S.

1063 (2005).  In Cristin v. Brennan, 281 F.3d 404, 4132, 417-18 (3d Cir.), cert. denied, 537 U.S.

897 (2002), the Court instructed that a "claim" is that which, **if granted, provides entitlement**

**to relief on the merits.**  See Fahy, 516 F.3d at 180 (citing Cristin) (emphasis added).

        In Fahy, while the habeas petitioner's appeal was pending he "filed a handwritten pro se

10

motion . . . asking the PCRA Court to allow him to withdraw his appeal and to waive all collateral proceedings so that his death sentence could be carried out."  See Fahy, 516 F.3d at 177.  Following a colloquy, the PCRA Court found the waiver valid.  Id. at 178, 181.  On appeal from the District Court's disposition of Fahy's federal habeas petition, the Court of Appeals for the Third Circuit held that "[b]ecause resolution of the question as to whether [the § 2254 petitioner's] waiver [of his rights to appellate and collateral review] was valid **will not entitle him to relief on the merits on his habeas petition**, the waiver question is not a 'claim'" for purposes of the deference accorded **under § 2254(d)**.  Fahy, 516 F.3d at 180 (emphasis added).  Therefore, in Fahy, the Court of Appeals held that the Pennsylvania Court's "determination that [the petitioner's] waiver was valid [was] **not entitled to deference under § 2254(d)**."  Id. (emphasis added).

Unlike Fahy where the petitioner requested to withdraw his appeal and to waive all collateral proceedings so that his death sentence could be carried out, see Fahy, 516 F.3d at 177, this case involves a waiver of Swinson's collateral review rights and a negotiated guilty plea, see Common Pleas Ct. Op. dated 6/19/07, at 1-2; Written Agree. Colloquy dated 2/27/06, ¶ 11; Written Guilty Plea Colloquy dated 2/27/06, at 104; N.T. 2/27/06, at 45-48.  Therefore, it is not clear that the factual and legal findings of the Pennsylvania Court should not be accorded a heightened level of deference under § 2254(d) to the extent that a finding in favor of Swinson on the waiver issue may provide Swinson entitlement to habeas relief based on an invalid guilty plea.[9]  Nevertheless, even assuming that the issue of the validity of Swinson's waiver is not a

---

9.  Specifically, in that a successful challenge to Swinson's guilty plea would provide entitlement to habeas relief on the merits, such a challenge would appear to be a "claim" under § 2254(d).  See Cristin, 281 F.3d at 4132, 417-18; see also Fahy, 516 F.3d at 180 (citing Cristin).  Further, as explained more fully below, a habeas petitioner may not be granted relief on a claim unless the

"claim" for purposes of the deference accorded under § 2254(d), Swinson's waiver of his rights to collateral review was valid.

**Section 2254(e)(1)** provides that in a "proceeding instituted by an application for a writ of habeas corpus by a prisoner in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court is **presumed to be correct**"[10] and further provides that a habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."[11]  28 U.S.C. § 2254(e)(1) (emphases added); see Chadwick v. Janecka, 312 F.3d 597, 607 (3d Cir. 2002), cert. denied, 538 U.S. 1000 (2003); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001).  "[T]he § 2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits.'"  Nara v. Frank, 488 F.3d 187, 200-01 (3d Cir. 2007) (citing Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001)), cert. denied, 128 S. Ct. 1869 (2008).

"This presumption applies to the factual determinations of both state trial and appellate courts."  Duncan, 256 F.3d at 196; see Stevens v. Del. Correctional Ctr., 295 F.3d 361, 368 (3d Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)); Fleming v. LeMaster, 28 Fed. Appx. 797, 800 (10th Cir. 2001) (citing Duncan) (trial court's factual finding on defendant's competence in waiving the right to challenge his death sentence is presumptively correct under § 2254(e) even though

---

claim has been properly exhausted and not procedurally defaulted in the state courts.

10.  Unlike § 2254(d), the deference under § 2254(e)(1) is not limited to State court determinations made with respect to a § 2254 "claim," see Fahy, 516 F.3d at 183-85.

11.  Factual issues are "basic, primary or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators.'"  Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996) (quoting Townsend v. Sain, 372 U.S. 293 (1963)).

such findings were not reviewed on appeal).  Furthermore, under Supreme Court and Third

Circuit precedent, the presumption of correctness under the habeas statute applies to implicit

factual findings as well as the express findings of the state courts.  See Campbell v. Vaughn, 209

F.3d 280, 285-86, 290 (3d Cir. 2000), cert. denied, 531 U.S. 1084 (2001).

 The Third Circuit has indicated that the existence of "procedural infirmities" or

"substantive deficiencies" in state court proceedings may result in "findings by [a state court]

concerning [a] waiver [that] are too unreliable to be considered 'factual determinations'" entitled

to § 2254(e)(1)'s presumption of correctness.  See Fahy, 516 F.3d at 183.  However, in this case,

as the Court found in Lambert v. Blackwell, a review of the record reflects no procedural

concerns that warrant "lower[ing] the level of deference [that] must [be] afford[ed]" under §

2254(e)(1) to factual determinations made by the Pennsylvania courts.  See Lambert, 387 F.3d at

239.  This is not a case, for example, such as Fahy where the petitioner had been sentenced to

death, and the trial court "refused to allow" the petitioner's counsel to ask questions of his client

about the waiver, "refused to allow" the petitioner to explain why the conditions of his

incarceration were coercive, and subjected the petitioner's attorneys to "verbal abuse,"

constructively denying the petitioner the assistance of counsel.  See Fahy, 516 F.3d at 184; see

also id. at 185 ("Here, we are loathe to accord a presumption of correctness to a determination of

voluntariness where the judge **explicitly refused** to consider any evidence of coercion.")

(emphasis added).  In this case, Swinson signed written agreements with the Commonwealth, the

court engaged in an extensive oral colloquy confirming that Swinson's waiver and plea were

knowing and voluntary, and petitioner was provided with a full and fair opportunity to be heard.

See, e.g., Lambert, 387 F.3d at 239.

Therefore, even assuming that the state court's ultimate findings on the validity of petitioner's waiver and plea are not entitled to deference under § 2254(d), see Fahy, 516 F.3d at 180, the underlying explicit and implicit factual findings upon which the state court based its conclusions must be afforded a presumption of correctness under § 2254(e)(1) since petitioner has failed to rebut that presumption with "clear and convincing evidence." See 28 U.S.C. § 2254(e)(1); see also Chadwick, 312 F.3d at 607; Duncan, 256 F.3d at 196; Werts, 228 F.3d at 196. In light of the state court's implicit and explicit factual findings, Swinson's waiver and plea were entered into knowingly and voluntarily. See Khattak, 273 F.3d at 563; see also Morrison, 2008 WL 2265283, at *1; Shedrick, 493 Fed. Appx. at 297 (citing Khattak).

Moreover, even without applying a presumption of correctness to the state court's findings of fact, an independent  review of the record reflects that petitioner knowingly and voluntarily waived his rights to appellate and collateral review and pled guilty in the second case. Although **subsequent** to the knowing and voluntary waiver and plea, petitioner may have changed his mind, that would not negate the validity of his waiver and plea. The evidence in the record including written and oral colloquies demonstrate that Swinson made a knowing and voluntary waiver and plea, and he may not alter the validity by changing his mind after the fact.[12] See Fahy, 516 F.3d at 187 (petitioner is "not allowed to change his mind" after he makes a valid waiver of his rights to appeal).

To the extent that Swinson challenges his own competency during his waiver and plea,

---

12. As respondent points out in her brief, if the waiver and plea were to be found invalid, presumably the Commonwealth could again decide to pursue a death sentence instead of the life sentence imposed for the first murder conviction, and the Commonwealth could also pursue a trial in the second murder case and another death sentence should Swinson be convicted again of the second murder. See Resp. to Hab. Pet. at 2 n.3.

his allegations are without merit.  The Third Circuit "has recognized that competency is a state court factual finding that, if supported by the record, is presumed correct."  <u>Fahy</u>, 516 F.3d at 181 n.11 (citing <u>Taylor v. Horn</u>, 504 F.3d 416, 433 (3d Cir. 2007)); <u>see</u> <u>Taylor</u>, 504 F.3d at 433 (citing <u>Thompson v. Keohane</u>, 516 U.S. 99, 111 (1995)).  In this case, the Court found Swinson's waiver and plea were valid.  "Because a valid waiver requires that a court determine both the petitioner's **ability** to understand, i.e., competency, and that the petitioner **does** understand and **freely** chooses to waive, a finding of a valid waiver presupposes a finding of competency." <u>Fahy</u>, 516 F.3d at 433 (citing <u>Taylor</u>, 504 F.3d at 43 (emphases in original); <u>see</u> <u>Taylor</u>, 504 F.3d at 433 (citing <u>Gilmore v. Utah</u>, 429 U.S. 1012 (1976)).  Therefore, in the very least, the Common Pleas Court made an implicit finding of competency which is presumed correct under § 2254(e)(1) in that Swinson fails to rebut the presumption with clear and convincing evidence. <u>See</u> <u>Fahy</u>, 516 F.3d at 181 n.11; <u>see also</u> 28 U.S.C. § 2254(e).

Moreover, even without that presumption of correctness, the record supports such a finding.  The record reflects that, following a psychiatric examination of Swinson, on December 18, 2004 Miles C. Ladenheim, M.D., J.D., a Forensic Psychiatrist, opined that "despite Mr. Swinson's attempts to appear completely out of touch with reality, . . . [Mr. Swinson] is **malingering** in exaggerating the severity of his psychiatric condition; **and I am concluding that he is competent to stand trial at this time.**"  <u>See</u> Dr. Ladenheim's Psychiatric Evaluation dated 12/18/04, at 1 (emphases in original).  Dr. Ladenheim found that "Mr. Swinson does have the **capacity** to understand the nature and object of the proceedings against him and to participate and assist in his defense, although he chooses not to display it."  <u>Id.</u> at 6 (emphasis in original).

Similarly, following a mental health evaluation of Swinson, in a report dated February 3,

2006, John S. O'Brien, II, M.D., J.D., found that Swinson was "able to understand the nature and object of proceedings against him and participate and assist in his own defense if he chooses to do so" and that Swinson was "competent to stand trial."  See Dr. O'Brien's Mental Health Evaluation dated 2/3/06, at 4-5.  Dr. O'Brien further found that Swinson had demonstrated "a conscious effort to exaggerate or feign psychiatric symptoms."  Id. at 4.

Furthermore, under the facts of this case, petitioner does not present "an unusual circumstance where an error amounting to a miscarriage of justice" occurred which would invalidate the waiver.[13]  See Khattak, 273 F.3d at 562.  Although petitioner appears to claim ineffective assistance of counsel, he has failed to allege circumstances demonstrating that his "counsel's representation fell below an objective standard of reasonableness," resulting in an involuntary or unknowing waiver or plea.  See Strickland v. Washington, 466 U.S. 668 (1984); see also Williams v. Taylor, 529 U.S. 362, 390 (2000).  Indeed, the Written Agreement Colloquy signed by Swinson confirms that "I have fully discussed all of my rights as they apply to a penalty hearing with my lawyer . . . and I am satisfied that I fully understand those rights."  See Written Agree. Colloquy dated 2/27/06, ¶ 10.  That colloquy further indicates:

> I am satisfied with the advice and service I have received from my lawyer.  My lawyer has spent enough time on my case and I have had enough time to discuss my case with my lawyer.  My lawyer has left the final decision as to what to do on my case with me, and I have decided myself to accept the terms and conditions of this Agreement.

---

13.  "The Court [in Khattak] noted that a miscarriage of justice would only occur in an 'unusual circumstance,' such as if the sentence imposed on the defendant was in excess of the maximum penalty provided by law or was based on a constitutionally impermissible factor such as race." United States v. McDuffie, 2007 WL 3407388, at *2 (E.D. Pa. Nov. 13, 2007) (citing Khattak, 273 F.3d at 562).  Here, it is noted that the life sentences imposed instead of death "[were] not only . . . within a contemplated range of possible sentences, but [they were], in fact, the exact sentence[s] agreed to by the parties."  See, e.g., McDuffie, 2007 WL 3407388, at *2.

>My lawyer has fully explained to me what it means to
>accept the terms and conditions of this Agreement and he has
>reviewed this Written Agreement Colloquy with me and it is my
>decision to accept all terms and conditions.

Id. ¶ 14.  A similar representation is made in the Written Guilty Plea Colloquy signed by

Swinson.  See Written Guilty Plea Colloquy dated 2/27/06, at 3.  In addition, in the Written

Guilty Plea Colloquy, Swinson represented that "[n]obody . . . threatened me or forced me to

plead guilty.  I, myself, have decided to plead guilty.  I know what I say today is final."  Id. at 1.

Petitioner also fails to even allege, let alone demonstrate, that there is a "reasonable

probability that, but for counsel's [alleged] errors, he would not have pleaded guilty and would

have insisted on going to trial."[14]  See Weeks, 219 F.3d at 257, 260 (quoting Hill, 474 U.S. at 59)

(even if petitioner's counsel failed to fully advise petitioner of the consequences of his guilty

plea, petitioner "could not have been prejudiced because the trial judge told him"); see, e.g.,

Fahlfeder v. Varner, 32 Fed. Appx. 621, 622 (3d Cir. 2002) (citing Hill, 474 U.S. at 59)

(petitioner "has not established a reasonable probability that he would not have pled guilty but

for counsel's errors"), cert. denied, 537 S. Ct. 851 (2002).  Since petitioner knowingly and

voluntarily waived his appellate and collateral review rights, this Court may not review the

merits of his habeas claims, and the § 2254 petition should be denied and dismissed.


**(B)   Exhaustion of State Remedies and Procedural Default**

"It is axiomatic that a federal habeas court may not grant a petition for a writ of habeas

---

14.  A habeas petitioner must make such a showing to satisfy the prejudice requirement of an
ineffective assistance claim in a guilty plea case.  See Weeks v. Snyder, 219 F.3d 245, 257 (3rd
Cir. 2000) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985))), cert. denied, 531 U.S. 1003
(2000); see also Powell v. Meyers, 214 Fed. Appx. 197, 199-200 (3d Cir. 2007), cert. denied, 127
S. Ct. 1890 (2007).

corpus unless the petitioner has first exhausted the remedies available in the state courts."
Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)), cert.
denied, 532 U.S. 919 (2001); Toulson v. Beyer, 987 F.2d 984, 986 (3d Cir. 1993).  Specifically,
"state prisoners must give the state courts one full opportunity to resolve any constitutional issues
by invoking one complete round of the State's established appellate review process."  O'Sullivan
v. Boerckel, 526 U.S. 838, 844-45 (1999); see Wenger v. Frank, 266 F.3d 218, 223 (3d Cir.
2001), cert. denied, 535 U.S. 957 (2002).

    The petitioner has the burden of proving all facts entitling him to a discharge from
custody as well as demonstrating that he has met all procedural requisites entitling him to relief.
Brown v. Cuyler, 669 F.2d 155, 157 (3d Cir. 1982).  Thus, "[t]he habeas petitioner bears the
burden of proving that he has exhausted available state remedies."  Toulson, 987 F.2d at 987.

    In this case, it appears that Swinson has not given "the state courts one full opportunity to
resolve [his habeas claims] by invoking one complete round of the State's established appellate
review process."  See O'Sullivan, 526 U.S. at 844-45; see also Wenger, 266 F.3d at 223.
Therefore, his claims have not been properly exhausted.  See O'Sullivan, 526 U.S. at 844-45; see
also Wenger, 266 F.3d at 223.  With regard to his PCRA petitions, petitioner did not appeal the
denial of his first PCRA petition to the Superior Court of Pennsylvania, and the claims raised in
his second PCRA petition were defaulted by his failure to comply with Rules 3517 and 1925(b)
of the Pennsylvania Rules of Appellate Procedure.  See Pa. Super. Ct. Dckt. No. 2227 EDA
2007, at 3 (finding that Swinson failed to comply with Rule 3517); Common Pleas Ct. Order
dated 9/13/07, at 1 (finding that Swinson failed to comply with Rule 1925(b)).  His claims are
also procedurally defaulted since a PCRA petition would now be time-barred.  See 42 Pa. C.S.A.

§ 9545(b)(1) ("[a]ny petition under this subchapter, including a second **or subsequent petition**, shall be filed within one year of the date the judgment becomes final") (emphasis added); Walker v. Frank, 56 Fed. Appx. 577, 578 n.1 (3d Cir. Jan. 14, 2003), cert. denied, 540 U.S. 836 (2003); Hendel v. Vaughn, 1998 WL 470159, at *5 n.8 (E.D. Pa. Aug. 10, 1998); see also Coleman v. Thompson, 501 U.S. 722, 735 n.* (1991) (Where "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] . . . there is a procedural default for purposes of federal habeas.").

In Coleman v. Thompson, 501 U.S. 722, 750 (1991)), cert. denied, 537 U.S. 897 (2002), the Supreme Court explained the procedural default doctrine:

> In all cases in which a state prisoner has defaulted his federal claims in state court[,] . . . federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate the failure to consider the claims will result in a fundamental miscarriage of justice.

See Cristin v. Brennan, 281 F.3d 404, 409 n.5 (3d Cir. 2002) (quoting Coleman, 501 U.S. at 750). Since petitioner fails to show "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the defaults, even assuming arguendo that Swinson had not validly waived his appellate and collateral review rights, the merits of his habeas claims may not be reviewed. See Cristin, 281 F.3d at 409 n.5 (quoting Coleman, 501 U.S. at 750); see also Werts v. Vaughn, 228 F.3d 178, 194 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001). In any event, as explained, it appears that Swinson has waived his collateral review rights, and his petition should be denied and dismissed.

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district

judge is required to make a determination as to whether a certificate of appealability ("COA") should issue.  When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the habeas petitioner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; **and** (2) whether the district court was correct in its procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see Miller-El v. Cockrell, 123 S. Ct. 1029, 1046 (2003) (Scalia, J., concurring).

"Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Slack, 529 U.S. at 484.  Here, for the reasons set forth above, a reasonable jurist could not conclude that the Court would be incorrect in denying and dismissing this petition based on petitioner's knowing and voluntary waiver of his rights to appellate and collateral review.  See Slack, 529 U.S. at 484.  Accordingly, the habeas petition should be denied and dismissed, and a COA should not issue.[15]

My Recommendation follows.

---

15.  Citing no specific authority, respondent states that "[p]etitioner's attempt to appeal two unrelated convictions simultaneously is a questionable approach to habeas corpus review."  See Resp. to Hab. Pet. at 17.  Rule 2(e) of the habeas rules provides: "A petitioner who seeks relief from judgments of **more than one state court** must file a separate petition covering the judgment or judgments of each court."  See 28 U.S.C. foll. § 2254, Rule 2(e) (emphasis added).  Here, in that both murder convictions were in the same Court, and indeed, before the same judge, to the extent that Swinson challenges more than one judgment of conviction, he does not appear to seek relief from "judgments of more than one state court."  Moreover, respondent concedes: "Practically speaking, the issue of petitioner's waiver of appellate rights, competency at the time of the plea, and counsel's effectiveness in advising him on the decision to accept the contingent plea offers really is the same for both convictions."  See Resp. to Hab. Pet. at 19.

# R E C O M M E N D A T I O N

**AND NOW**, this 29th day of September, 2008, upon consideration of the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 and respondent's opposition thereto, for the reasons provided in the accompanying Report, it is hereby **RECOMMENDED** that the habeas petition be **DENIED** and **DISMISSED** and that a certificate of appealability should not issue.[16]

_____
/s/ L. Felipe Restrepo
L. FELIPE RESTREPO
UNITED STATES MAGISTRATE JUDGE

---

16.  Petitioner is advised that he may file objections to this Report and Recommendation.  See Local R. Civ. P. 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

21